UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| NICOLE M. COOKSON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | 1:11-cv-00121-LJM-DML |
| BEAZER HOMES USA, INC., | ) | |
| BEAZER HOMES INDIANA LLP, | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO STAY LITIGATION AND COMPEL ARBITRATION

Pending before the Court is Defendants', Beazer Homes USA, Inc.[1] and Beazer Homes Indiana LLP (collectively, "Beazer"), Motion to Stay Litigation and Compel Arbitration ("Motion to Stay") [Dkt. No. 15]. Plaintiff, Nicole M. Cookson ("Plaintiff"), filed suit in this Court alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and state law causes of action to recover withheld wages and commissions. Dkt. No. 1. The Court has considered the parties' arguments and **GRANTS** Beazer's Motion to Stay [Dkt. No. 15].

## I. BACKGROUND

### A. PLAINTIFF'S EMPLOYMENT WITH BEAZER

Plaintiff, a female, began her employment as a Sales Representative/New Home Counselor with Beazer on or about April 4, 2001. Dkt. No. 1 ¶ 10. Beginning in late 2007,

---

[1] In its Motion to Stay, Beazer contends that Beazer Homes USA, Inc. is not a proper defendant because it never employed Plaintiff. *See* dkt. no. 16 at 1 n.1. Because the Court concludes that Plaintiff's claims must be submitted to arbitration regardless of which Beazer entity such claims are brought against, the Court declines to decide whether Beazer Homes USA, Inc. is a proper defendant.

Plaintiff engaged in a consensual intimate relationship with Ryan Radecki ("Radecki"), a married Beazer employee. *Id.* ¶ 13. On or about March 26, 2009, Plaintiff ended her relationship with Radecki. *Id.* ¶ 14. Following the end of their relationship, Radecki sent a number of e-mails to Plaintiff and others at Beazer discussing he and Plaintiff's relationship that Plaintiff considered to be harassing. *Id.* ¶¶ 18–22, 27–37, 43, 45–54.

On April 9, 2009, Plaintiff contacted her supervisor, Erika Frantz ("Frantz") regarding Radecki's behavior, including a request from Radecki that he and Plaintiff not be required to attend mandatory meetings in the same room. *Id.* ¶¶ 22–23. Frantz and her supervior, Angela Merritt, had lunch with Plaintiff and indicated that they would speak with Radecki. *Id.* ¶¶ 25–26. Radecki continued to harass Plaintiff, and on May 18, 2009, Plaintiff indicated to Frantz that she was thinking of reporting Radecki to the Human Resources Department. *Id.* ¶ 67. Frantz "strongly advised [Plaintiff] not to go to the Human Resources Department to report . . . Radecki's harassment because that could have damaging effects on [Plaintiff's] career due to the previous personal relationship between [Plaintiff] and Radecki." *Id.* ¶ 68.

Based on Frantz's advice, Plaintiff did not report Radecki's behavior to Beazer's Human Resources Department. *Id.* ¶ 69. Radecki's hostility continued despite repeated requests by Plaintiff to management to remedy the situation. *Id.* ¶¶ 70–82, 84–93. Radecki was not reprimanded for his behavior. *Id.* ¶ 83. On October 1, 2009, Plaintiff resigned from Beazer. *Id.* ¶ 102. She also spoke with Margaret Martin of Beazer's Human Resources Department, who indicated that she was unaware of Radecki's behavior toward Plaintiff. *Id.* ¶ 104–05.

Plaintiff filed a complaint with the EEOC, followed by this suit. *Id.* ¶ 106. Plaintiff

alleges sexual harassment and retaliation in violation of Title VII, failure to pay earned wages and commissions, and conversion of the same. *Id.* ¶¶ 117–34.

## B. BEAZER'S RCB PROGRAM

On July 1, 2005, Beazer enacted a dispute resolution program entitled the Resolving Concerns at Beazer Program ("RCB Program"). Dkt. No. 16-1 ¶ 4. The RCB Program applies to all employees working at the time of its implementation or subsequently hired ("Covered Individuals"). *Id.* ¶ 5. Acceptance of the RCB Program is a condition of employment with Beazer. *Id.* The most recent version of the RCB Program is available on Beazer's Intranet, as well as in hard copy form with Beazer's Human Resources Department. *Id.* ¶ 6. Plaintiff acknowledged receipt and understanding of the RCB Program and agreed in writing to be bound by its terms. *Id.* ¶ 10; *see also* dkt. no. 16-7 at 3.

Under the RCB Program, employees are provided four steps in a dispute resolution process: Human Resources Review (Level 1), Management Review (Level 2), Non-Binding Mediation (Level 3), and Binding Arbitration (Level 4). Dkt. No. 16-2 at 2–3. Level 1 involves a meeting between a Human Resources representative, the Covered Individual, and the other involved individuals to try and resolve the claim informally. *Id.* at 2. Unless otherwise agreed in writing between Beazer and the Covered Individual, lower levels of the RCB Program must be completed before moving to higher levels. *Id.* "Covered Claims" under the RCB Program include the following:

1. Claims relating to involuntary terminations, such as layoffs and discharges (including involuntary resignation and constructive discharge);

2. Claims for unlawful employment discrimination and harassment, based on . . . sex . . . or any other characteristic protected by federal, state, or local law;

3. Claims for retaliation based on legally protected activity . . . including, but not limited to, claims asserted under Title VII of the Civil Rights Act of 1964 . . . and similar federal, state, and local laws . . . .

11. Claims relating to commissions, bonuses, wages, hours, overtime or other compensation issues.

*Id.* at 4–5. The RCB Program includes the following exclusivity provision:

> The RBC Program is the sole and exclusive forum and remedy for all Covered Claims, whether such Covered Claims are against [Beazer] or a Coveral Individual(s), and no Covered Claim shall be asserted in, or in any other way made a part of, any lawsuit, including class or collective actions.

*Id.* at 8.

The Court includes additional facts below as necessary.

## II. LEGAL STANDARD

Federal policy strongly favors arbitration. *See Gilmore v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "The Supreme Court has repeatedly counseled that the FAA [Federal Arbitration Act] leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001); *see also Gilmer*, 500 U.S. at 24 (observing that the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."). The FAA provides for stays of district court proceedings when any issue therein is referable to arbitration. 9

4

U.S.C. § 3. Arbitration agreements are treated as ordinary contracts. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997).

### III. DISCUSSION

Plaintiff concedes that the RCB Program is valid and that Plaintiff is subject to its provisions. Dkt. No. 20 at 5. Plaintiff further concedes that all claims raised in this case are within the scope of the RCB Program. *Id.* However, Plaintiff contends that by "strongly discourag[ing]" her to take the steps necessary for Level 1 of the RCB Program—reporting harassment to Human Resources personnel—Beazer waived its right to require her to submit to the RCB Program, including its arbitration provisions. *Id.* at 4–5.

To determine whether a party has waived its right to compel arbitration, the Court must examine whether "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650–51 (7th Cir. 2000). In light of the strong federal policy favoring arbitration, parties asserting waiver bear a "heavy burden," and courts should not "lightly infer" waiver. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). The party asserting waiver must show not only that the other party acted inconsistently with the right to demand arbitration, but also that the inconsistent actions were prejudicial. *Id.*

In this case, the Court concludes that Beazer did not waive its right to demand arbitration. Plaintiff's assertion that her supervisor "discouraged" her from filing a complaint with Human Resources, *see* dkt. no. 1 ¶ 109, is insufficient for the Court to conclude that Beazer affirmatively prevented Plaintiff from using the RCB Program. The RCB Program

5

specifically prohibits Beazer from retaliating against employees for filing complaints in accordance with the RCB Program, dkt. no. 16-2 at 9, and Plaintiff has brought forth no evidence that Beazer would have retaliated against her in violation of this provision. Additionally, Plaintiff still could have used the RCB Program following her resignation from Beazer, *see* dkt. no. 16-2 at 1 (including under definition of "Covered Individual" persons "who previously performed" services for Beazer), and there is nothing in the record to suggest that Plaintiff would have suffered any adverse consequences from doing so. Lastly, Beazer promptly informed Plaintiff of her arbitration obligations at the outset of this suit, promptly filed a request to compel arbitration with this Court, and has done nothing in defending this case that would constitute waiver of its right to arbitration. *Cf. Eli Lilly & Co. v. Emisphere Techs., Inc.*, 408 F. Supp. 2d 668, 696 (S.D. Ind. 2006) (Hamilton, J.) (finding waiver where party requesting arbitration did not "try[] promptly to have the court stay, dismiss, or transfer the action on this basis").

Beazer requests that the Court award it fees and costs incurred in filing the present Motion to Stay because Plaintiff "unreasonably" failed to submit to arbitration and cease her lawsuit after Beazer's counsel pointed out that arbitration was required. Dkt. No. 16 at 14. "In suits to compel one party to submit to arbitration . . . fees are generally awarded . . . if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Certain Underwriters at Lloyd's, London v. Simon*, No. 1:07-cv-899, 2007 WL 3047128, at *7 (S.D. Ind. Oct. 18, 2007) (McKinney, J.) (quoting *Chauffers, Teamsters, & Helpers v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980)). However, despite Beazer's protest to the contrary, the Court does not find Plaintiff's position as to waiver of the right to demand arbitration so wholly lacking in merit as to require awarding attorney's fees to Beazer. *See*

*Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc.*, 688 F. Supp. 462, 466 (S.D. Ind. 1988) (Steckler, J.) (no attorney's fees when challenge "based upon a reasonable inquiry into the law even though the challenge ultimately failed"); *cf. Hires Parts Serv., Inc. v. NCR Corp.*, 859 F. Supp. 349, 355–56 (N.D. Ind. 1994) (award of attorney's fees appropriate when party had previously litigated the same issue against same opponent and lost). Therefore, the Court declines to award fees to Beazer.

## IV. CONCLUSION

For the foregoing reasons, Beazer's Motion to Stay [Dkt. No. 15] is **GRANTED**. All proceedings in this case are **STAYED** pending arbitration in compliance with Beazer's RCB Program.

IT IS SO ORDERED this 26th day of July 2011.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

Koryn Michelle McHone
BARNES & THORNBURG LLP
kmchone@btlaw.com

Eric C. McNamar
KELLER MACALUSO LLC
emcnamar@kellermacaluso.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com